**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| POWER WASHING EXTREME, INC., d/b/a PWE, INC.,     ) ) ) | |
|    Plaintiff,     ) ) | Case No. CIV-26-1182-D |
| v.     ) ) | |
| FSA CONSTRUCTION, LLC, a/k/a FORT SILL APACHE CONSTRUCTION, LLC,     ) ) ) ) | |
|    Defendant.     ) | |

## <u>ORDER</u>

Before the Court is Plaintiff Power Washing Extreme, Inc.'s ("PWE") Motion for Temporary Restraining Order and Preliminary Injunction. [Doc. No. 5]. PWE provides that contemporaneously with filing the Motion, it will serve Defendant FSA Construction, LLC's ("FSA") counsel with a copy of it. *Id.* at p. 1. FSA has not appeared yet in this case, and thus, has not had an opportunity to respond or be heard with respect to the Motion. Nonetheless, pursuant to Fed. R Civ. P. 65(b), the Court may, under certain circumstances, enter an order granting or denying the request for issuance of a temporary restraining order ("TRO") without written or oral notice to FSA.

### BACKGROUND

On March 26, 2026, PWE received a formal notice of dispute and arbitration filing from FSA regarding a breach of contract dispute. [Doc. No. 5-2]. In relevant part, the notice informed PWE that FSA initiated arbitration proceedings against PWE before the

1

American Arbitration Association regarding their dispute as to "Subcontract No. FSACon-PWE-2020-03" ("Craterville Subcontract").

On May 14, 2026, the parties received AAA's local determination and arbitrator-selection notice. [Doc. No. 5-1]. In relevant part, the arbitrator-selection notice informed the parties that they needed to submit arbitrator strikes and rankings by May 28, 2026. *Id.* The notice further provided that if a party fails to submit a list by the deadline "the arbitrator will be appointed as authorized in the Rules." *Id.*

On May 22, 2026, PWE filed its verified Complaint seeking a declaratory judgment and injunctive relief. [Doc. No. 1]. PWE alleges that it is entitled to a declaratory judgment that the parties do not have an agreement to arbitrate, because the dispute pertains to the "Ten Mile Low Water Crossing Project" ("Ten Mile Project"), and there is no agreement to arbitrate disputes arising from the Ten Mile Project. *Id.* In the alternative, PWE argues that even if there is an agreement to arbitrate, declaratory relief is warranted because FSA waived its right to enforce arbitration when it originally filed a lawsuit in the Court of Indian Offenses for the Southern Plain Region, Anadarko, Oklahoma. [Doc. No. 5-5].

Additionally, on May 22, 2026, PWE filed the instant Motion, seeking an emergency temporary restraining order prohibiting the arbitration from proceeding. [Doc. No. 5]. PWE argues that a temporary restraining order is warranted because PWE is likely to succeed in proving that it did not agree to arbitrate disputes arising from the Ten Mile Project. *Id.* Additionally, PWE argues that if a temporary restraining order is not entered, it will be irreparably harmed because it will be forced to defend itself in the arbitration that does not have jurisdiction over it. *Id.* Specifically, PWE argues that it is likely to succeed on the

merits because FSA has not provided PWE with a written arbitration agreement governing the Ten Mile Project. *Id.* at p. 3. Rather, PWE alleges that the arbitration agreement FSA relies upon is contained in the Craterville Subcontract, which is for a different project. *Id.* at p. 3. Moreover, PWE argues that a temporary restraining order is warranted because it is likely to succeed on its claim that FSA waived its right to enforce arbitration. *Id.* at p. 8-10.

## DISCUSSION

A TRO "is an extraordinary remedy, the movant's right to relief must be clear and unequivocal.'" *Dine Citizens Against Ruining Envir. v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted). The factors considered regarding a request for a TRO are the same as those for a preliminary injunction. *Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1091 (D. Colo. 2020). In order to obtain a TRO, "the plaintiff must establish the following factors: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest.'" *Dine Citizens Against Ruining Envir.*, 839 F.3d at 1281 (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888-89 (10th Cir. 1989), is the "exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). "[P]reliminary injunctions granting the moving party all the relief it could recover at the conclusion of a full trial on the merits" are "disfavored." *Weststar Energy, Inc. v.*

*Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009) (citation omitted). Such "injunction[] require[s] [a] strong showing[] of the likelihood of success on the merits and the balance of harms." *Id.* (citation omitted).

PWE seeks a TRO to prevent FSA from proceeding with the arbitration. [Doc. No. 5]. On the current record, PWE has not satisfied its burden of establishing a likelihood of success on the merits of its claims.

PWE failed to establish that it has "a substantial likelihood of prevailing on the merits" of its declaratory judgment and waiver claims. *Dine Citizens Against Ruining Envir.*, 839 F.3d at 1281. To demonstrate a likelihood of success on the merits of its claim, a movant is required "to present a prima facie case showing a reasonable probability that [it] will ultimately be entitled to the relief sought." *Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1100 (10th Cir. 2003) (quotation omitted). The movant is not required to show an "overwhelming likelihood" of success. *Koerpel v. Heckler*, 797 F.2d 858, 867 n.5 (10th Cir. 1986) (citation omitted). However, a movant "must do more than substantiate their allegations with mere 'information and belief,' especially given the nature of the relief sought." *Equity Bank v. McGregor*, No. 22-1081-DDC-GEB, 2022 WL 1102640, at *7 (D. Kan. Apr. 13, 2022) (quotation omitted).

PWE claims that it did not agree to arbitrate disputes concerning the Ten Mile Project. [Doc. No. 1, at p. 4]. Specifically, PWE alleges that it is likely to succeed on the merits of its claim because "FSA cannot show an arbitration agreement signed by PWE for the Ten Mile Low Water Crossing Project" exists. *Id.* Moreover, PWE argues that FSA's

4

reliance on the arbitration provision in the Craterville Subcontract is unsubstantiated because it does not govern the Ten Mile Project. *Id.* at p. 7.

PWE has not sufficiently demonstrated that the Craterville Subcontract is inapplicable to the Ten Mile Project. PWE has not provided the Court with the contract it argues governs the Ten Mile Project, or argued that a written contract governing the Ten Mile Project does not exist. Rather, the only contract that PWE provided to the Court is the Craterville Subcontract, which PWE does not dispute, contains an arbitration provision. [Doc. No. 5-3, at p. 10]. Accordingly, PWE's assertion that the Craterville Subcontract is inapplicable and that the Ten Mile Project's agreement does not contain an arbitration provision is too speculative to warrant a TRO.

Moreover, PWE has not sufficiently demonstrated a substantial likelihood of success regarding its argument that FSA waived its right to enforce arbitration because FSA initially filed its lawsuit regarding the Ten Mile Project in the Court of Indian Offenses. [Doc. No. 5, at p. 8].

"'A party asserting a waiver of arbitration has a heavy burden of proof.'" *Myers v. Papa Texas, LLC*, 749 F. Supp. 3d 1165, 1173 (D.N.M. Sept. 19, 2024) (quoting *Peterson v. Shearson/American Exp., Inc.*, 849 F.2d 464, 466 (10th Cir. 1988)). "The Tenth Circuit has recognized two forms of waiver: (1) intentional relinquishment or abandonment of the right to arbitration and (2) conduct in litigation which forecloses the right to arbitration." *Termini v. Grp. 1 Auto. Inc.*, No. CV 19-2196-KHV, 2019 WL 5535249, at *4 (D. Kan. Oct. 25, 2019) (citing *BOSC, Inc. v. Bd. of Cty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165,

1170 (10th Cir. 2017)).[1] "[T]here is 'no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case.'" *BOSC, Inc.*, 853 F.3d at 1170 (quoting *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 772 (10th Cir. 2010)).

In determining whether a party has waived the right to arbitration courts consider:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Id.* (quotation and citation omitted).

"These factors are not exclusive or exhaustive; nor should courts apply them mechanically." *Termini*, 2019 WL 5535249, at *5 (citing *Hill*, 603 F.3d at 773). "The overarching consideration is 'whether the party now seeking arbitration is improperly manipulating the judicial process.'" *Id.* (citing *BOSC, Inc.*, 853 F.3d at 1174). "This may occur when litigation has proceeded too far, so that switching to arbitration would create 'significant inefficiencies' or cause 'prejudice to opposing parties.'" *Id.* (quoting *In re Cox*

---

[1] PWE does not argue the first form of waiver (i.e. intentional relinquishment or abandonment of the right to arbitration). Thus, the Court does not and need not address it.

6

*Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016)).

PWE argues that FSA waived its right to enforce the arbitration provision because it filed its lawsuit regarding the Ten Mile Project in the Court of Indian Offenses, and litigated the issue of whether that court had jurisdiction. [Doc. No. 5, at p. 8- 10]. PWE further argues that when the court found it did not have jurisdiction, FSA sought and was granted leave to amend its complaint, which it has yet to do. *Id.* PWE argues that FSA's conduct in the Court of Indian Offenses was inconsistent with its right to arbitrate and demonstrates that FSA substantially invoked the litigation process, and thus, warrants a finding that FSA waived its right to enforce arbitration. *Id.*

On the current record before the Court, PWE has not sufficiently shown that FSA waived its right to enforce arbitration. Although FSA filed a lawsuit in the Court of Indian Offenses and litigated the issue of jurisdiction in that court, such actions are not sufficient alone to constitute a waiver. *See BOSC, Inc.*, 853 F.3d at 1171 (finding that the defendant did not waive its right to arbitrate even though the defendant originally filed its lawsuit in state court). Indeed, PWE has provided no evidence that the matter was dismissed after substantial litigation had commenced. Additionally, PWE does not argue that FSA failed to timely invoke a right to enforce arbitration. Moreover, PWE does not allege that it will be prejudiced by the purported delay in arbitrating the issue caused by FSA's initial filing in the other court.

Accordingly, on the current record at least, PWE has not made a sufficient showing of a substantial likelihood of success on its declaratory judgment or waiver claim.

Because granting a TRO requires a showing on each factor and, on the current record, PWE has failed to show likelihood of success, it cannot succeed on its TRO motion. Accordingly, the Court need not address the remaining factors— irreparable harm, balance of harms, and public interest. *See State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021) ("When the failure to satisfy one factor is dispositive, a court need not consider the other factors.").

## CONCLUSION

For the foregoing reasons, Plaintiff Power Washing Extreme, Inc.'s Motion [Doc. No. 5], seeking a TRO before Defendant FSA Construction, LLC has an opportunity to be heard, is **DENIED**.

Additionally, the Court questions whether it has jurisdiction to hear this matter. *See Jules v. Andre Balazs Props.*, No. 25-83, 608 U.S. ----, 2026 WL 1336216, at *4 (May 14, 2026) ("Regardless of how an FAA dispute begins, federal jurisdiction is not always a foregone conclusion. . . . Although the FAA is a federal statute that provides federal standards, it does not itself create [federal] question jurisdiction. Instead, . . . a federal court must have an independent jurisdictional basis for granting FAA relief.") (quotations and citations omitted).

**IT IS THEREFORE ORDERED** that Plaintiff is to file a supplemental brief regarding whether this Court has subject matter jurisdiction within 14 days of this Order. It is further ordered that Defendant shall file a brief regarding whether this Court has subject matter jurisdiction no later than 21 days after the later of: (1) entry of this Order, or (2) service of the lawsuit and this Order, if service has not already been properly effected.

If Plaintiff wishes to pursue a preliminary injunction on a more developed record, the Court invites the parties, at the appropriate time, to propose an expedited briefing and hearing schedule.

**IT IS SO ORDERED** this 27th day of May, 2026.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE